IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMERIQUEST MORTGAGE CO.,     *

    Plaintiff,     *

v.     *     Civil Action No. RDB 05-1653

REX PLANT and
COLLEEN BOSSIER,     *

    Defendants.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

This action arises from a Complaint filed by Plaintiff Ameriquest Mortgage Co., a Delaware corporation ("Plaintiff" or "Ameriquest") against Defendants Rex Plant and Colleen Bossier, both of whom reside in the State of Maryland (collectively, "Defendants"). The Complaint asserts two causes of action. In Count I, Plaintiff alleges that Defendant Rex Plant ("Plant") breached his settlement agreement with Plaintiff. In Count II, Plaintiff contends that Defendant Colleen Bossier ("Bossier") was unjustly enriched when Plaintiff paid off a mortgage loan for which Bossier was personally liable. Currently pending before this Court are cross-Motions for Summary Judgment. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). This Court has jurisdiction under 28 U.S.C. § 1332. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED-IN-PART and DENIED-IN-PART and Defendants' Motion for Summary Judgment is DENIED. As a result, judgment will be entered in favor of Ameriquest and against Plant on Count I. Ameriquest's cause of action against Bossier in Count II, however, will proceed to trial.

BACKGROUND

This case involves various residential mortgage loans secured by the following property: 3650 Yellow Bank Road, Dunkirk, Maryland 20754 (the "Property"). In 1992, Plant obtained title to the Property from his mother. In 2000, Plant and Bossier became romantically involved. In mid-2000, Bossier began living with Plant at the Property.

On January 17, 2001, Plant conveyed title in the Property to Bossier. A contract was prepared to memorialize this transaction. Under the terms of that contract, Bossier agreed to pay Plant $213,000, including "earnest money" in the amount of $10,650. Plant and Bossier admit that such earnest money was never paid. To finance her purchase of the Property, Bossier obtained a mortgage from GreenPoint Mortgage in the amount of $202,350. Plant and Bossier subsequently made payments to GreenPoint Mortgage. In mid-2001, Bossier moved out of the Property after her relationship with Plant ended. Bossier expected Plant to continue making payments to GreenPoint Mortgage.

In February 2003, Plant submitted a mortgage loan application to Ameriquest. The application included a set of false documents created by Plant. These documents purported to show that he had been making direct payments to Bossier as part of a land installment contract, and included a series of fabricated checks. Plant admits that he never made direct payments to Bossier. Plant's application was eventually approved by Ameriquest. Plant qualified for mortgage financing in the amount of $221,000. At the time, Ameriquest believed that this amount would be sufficient to pay off the GreenPoint mortgage and closing costs.

After the closing, Ameriquest learned that the GreenPoint mortgage exceeded the estimated sum and therefore cancelled its loan to Plant. However, due to inadequate

communication between the parties, Plant made at least seven payments to Ameriquest between April 2003 and January 2004. These payments totaled $15,137.98.

In early 2004, GreenPoint Mortgage initiated foreclosure proceedings against the Property. Bossier became upset when she learned about these proceedings. Plant retained an attorney who subsequently contacted Ameriquest. Ameriquest reviewed the situation and agreed to remedy what it characterizes as a "lapse in communication" between Ameriquest and Plant. On May 4, 2004, Ameriquest paid off the GreenPoint mortgage in the amount of $272,625.59. Ameriquest expected to take a loss of $36,487.63 on this transaction because it agreed to accept in return for paying off this mortgage nothing more than Plant's promise to pay $221,000.

During July and September 2004, Ameriquest and Plant exchanged documents memorializing their settlement. Eventually, the parties entered into a Settlement and Release Agreement dated September 27, 2004. (*See* Compl. Ex. 1. (the "Settlement Agreement").) The Settlement Agreement requires that Plant cooperate in the execution of all paperwork needed to finalize the documentation of a new mortgage loan in the amount of $221,000 that Ameriquest would issue to Plant. (*See* Settlement Agreement § 1.) The Settlement Agreement also provides that ". . . in any action to enforce this Agreement, reasonable fees and costs will be awarded to the prevailing party." (*Id.* at § 3(m).)

Over the next six weeks, Ameriquest investigated the title to the Property. On November 15, 2004, Ameriquest contacted Plant's lawyer regarding judgments that appeared on the title report. The lawyer advised Ameriquest that she would meet with Plant and contact Ameriquest. However, Plant's lawyer never contacted Ameriquest and did not respond to Ameriquest's subsequent letters and phone calls. Plant later testified that his lawyer attempted to contact him

during this time period.

In December 2004, Plant attempted to pursue new financing from a different mortgage company. Without notifying Ameriquest, Plant began negotiating with Paramount Mortgage Company. On February 3, 2005, Paramount Mortgage Company made a loan to Plant in the amount of $160,000. Bossier attended the closing and signed documents indicating that she was the seller of the property. None of the proceeds of the Paramount loan were used to reduce Plant's obligations to Ameriquest. In February 2006, Paramount Mortgage Company made a new loan to Plant in the amount of $183,000. This was consistent with the terms of Plaint's initial loan with Paramount Mortgage Company, which required Plant to obtain new financing after one year.

On June 17, 2006, Plaintiff filed its Complaint in this Court. On April 13, 2006, this Court awarded Plaintiff attorneys' fees in the amount of $812.50 in connection with a discovery dispute.[1] (Paper No. 24.) On April 24, 2006, Defendants filed their Motion for Summary Judgment. (Paper No. 28.) On June 12, 2006, this Court granted the parties' request that this Court consider Defendants' Motion for Summary Judgment as having been submitted only on behalf of Bossier.[2] (Paper No. 33.) On July 7, 2006, Plaintiff filed its Motion for Summary Judgment. (Paper No. 34.)

---

[1] Defendants apparently have not complied with this Court's order, which required that Defendants pay the $812.50 in attorneys' fees to Plaintiff on or before May 13, 2006. (*See* Paper No. 31 (Joint status report providing that as of June 9, 2006 "[t]he sanctions remain unpaid" and that "Defendants have represented that the sanctions will be paid on or before June 16, 2006. . . ."); *see also* Pl.'s Mem. Supp. Summ. J. p. 3 (Noting that as of July 7, 2006, "Defendants have still failed to make this payment.").)

[2] This request was made in light of Plant's deposition testimony, which was obtained after Defendants filed their Motion for Summary Judgment.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material. *Id.* at 248. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with

the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non existence of a factual dispute." *Shook v. United States,* 713 F.2d 662, 665 (11th Cir. 1983) (citation omitted). This Court has an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

**I.      Plaintiff's Complaint.**

As already noted, the Complaint asserts two causes of action. In Count I, Plaintiff alleges that Plant breached the Settlement Agreement by, *inter alia*, failing to cooperate in the execution of certain paperwork. (Compl. ¶¶ 20-23 & Ex. 1.) Plaintiff seeks damages from Plant in the amount of $221,000 or, alternatively, requests that this Court "order Plant to specifically perform the obligations that he undertook when he assented to the settlement agreement." (*Id*. at ¶ 23.) In Count II, Plaintiff contends that Bossier was unjustly enriched when Plaintiff paid off the

mortgage loan issued by GreenPoint Mortgage. (*Id*. at ¶¶ 24-27.) Plaintiff seeks damages from Bossier in the amount of $272,625.59. (*Id*. at ¶ 27.)

**II.     Count I.**

After reviewing the papers submitted by the parties, this Court is satisfied that Plaintiff is entitled to judgment as a matter of law on Count I in the amount of $221,000 plus pre-judgment interest. There is absolutely no dispute of fact with respect to the claim arising out of the Settlement Agreement between Ameriquest and Plant. This Court will schedule a hearing to address the issue of attorneys' fees and costs. (*See* Settlement Agreement § 3(m) ("[I]n any action to enforce this Agreement, reasonable fees and costs will be awarded to the prevailing party.").)

There is no genuine dispute that Plant breached the Settlement Agreement. First, Plant does not dispute the existence, validity, or enforceability of the Settlement Agreement.[3] (*See*, *e.g.*, Answer ¶ 34 ("At all times, [Plant] have been ready, willing and able to comply with all terms of the Settlement Agreement."); *see also* Plant Dep. p. 100, ll. 8-20.) Second, there is no dispute that the Settlement Agreement required Plant to cooperate with Ameriquest to effect the

---

[3]     Neither party addresses the effect of the mandatory forum selection clause in the Settlement Agreement. (*See* Settlement Agreement § 3(s) ("Any action to enforce the terms hereof, or involving this Settlement Agreement, shall be filed in the Superior Court of the State of California, for Los Angeles County.").) After holding that forum selection clauses should be analyzed under Rule 12(b)(3) of the Federal Rules of Civil Procedure, the United States Court of Appeals for the Fourth Circuit recently noted that "a defendant will have to raise the forum selection issue in her first responsive pleading, or waive the clause." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). In this case, the parties appear to have agreed to litigate this matter in Maryland. (*See* Pl.'s Mem. Supp. Summ. J. Ex. 13.) At any event, Defendants failed to raise any forum selection issue in their Answer. Accordingly, any request to dismiss this case based on the forum selection clause in the Settlement Agreement has been waived. Furthermore, the forum selection clause in the Settlement Agreement has no effect on this Court's ruling with respect to Count I.

rewriting of the mortgage loan contemplated by the Settlement Agreement. (*See* Settlement Agreement § 1(C)(1)-(4) (requiring Plant to, *inter alia*, "[c]ooperate in a timely manner with regard to providing current income documentation . . . permitting an independent appraiser to conduct a new appraisal . . . provide evidence that the property taxes on the property are paid current. . . .").) Third, Plant does not dispute that he breached the Settlement Agreement by failing to cooperate with Ameriquest as required by the Settlement Agreement. (*Cf.* Plant Dep. pp. 132-34.) Finally, Plant's suggestions that his conduct be excused because Ameriquest never "sent Defendant Plant a payment booklet or invoice to his residence," because the Settlement Agreement "is silent on the exact terms of payment," or because Ameriquest did not act[] in a reasonable manner" are totally without merit. There are simply no genuine issues of material fact with respect to the breach of contact claim set forth in Count I.

In sum, this Court finds that Ameriquest is entitled to summary judgment on Count I as a matter of law in the amount of $221,000 plus pre-judgment interest. This Court will set a briefing schedule and conduct a hearing, moreover, to address the matter of attorneys' fees and costs. After this Court has determined the precise amount of attorneys' fees and costs, this Court will enter judgment in an amount certain in favor of Ameriquest and against Plant. Accordingly, Plaintiff's Motion for Summary Judgment with respect to Count I of the Complaint is GRANTED.

### III.    Count II.

As noted above, Count II of the Complaint asserts a claim of unjust enrichment against Bossier. Specifically, Ameriquest contends that Bossier was unjustly enriched when Ameriquest paid off Bossier's loan from GreenPoint Mortgage in the amount of $272,625.59 on May 4,

2004.  After acknowledging that Bossier should receive credit for payments made by Plant in the amount of $15,137.96 and Plant's agreement to be responsible for $221,000, Ameriquest specifically contends that Bossier is liable in the amount of $36,487.63 with respect to this claim.  (*See* Pl.'s Mem. Supp. Summ. J. p. 12.)

As the source of this Court's jurisdiction over this case is based on diversity of citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of Maryland to questions of substantive law.  Unjust enrichment is an "equitable remed[y] that permit[s] recovery, where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise."  *Swedish Civil Aviation v. Project Mgmt. Enter.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (citations and quotation marks omitted).  The elements of a claim based on unjust enrichment are: (1) benefit conferred upon defendant by plaintiff; (2) appreciation or knowledge by defendant of benefit; and (3) acceptance or retention by defendant of benefit under such circumstances as to make it inequitable for defendant to retain benefit without payment of its value.  *Id*. at 792-93; *Benson v. State*, 887 A.2d 525, 651-52 (Md. 2005) (same).

Both Ameriquest and Bossier move for summary judgment with respect to Count II of the Complaint.  Ameriquest contends that it is entitled to summary judgment because it is undisputed that (1) Ameriquest conferred a benefit upon Bossier by paying off her mortgage, (2) Bossier knew that Ameriquest paid off her mortgage, and (3) the circumstances dictate that it would be inequitable for Bossier to retain this benefit.  (*See* Pl.'s Mem. Supp. Summ. J. p. 12.)  In contrast, Bossier contends that she is entitled to summary judgment on this claim because it is "absolutely clear that Bossier's retention of the payoff to Greenpoint, which is the only thing allegedly of

value received, is not inequitable under the circumstances." (Defs' Opp. Mot. Summ. J. ¶ 13.)

After reviewing the papers submitted by the parties, this Court will deny the cross-Motions for Summary Judgment with respect to Count II of the Complaint. First, there are factual disputes with respect to key elements of the unjust enrichment claim. For example, the parties dispute why the payoff amount of the GreenPoint loan was more than Ameriquest initially anticipated. In its initial moving papers, Ameriquest identifies Defendants as the cause of the higher-than-expected payoff amount:

> After the closing, apparently because Plant and Bossier had not remained current, Ameriquest learned that the GreenPoint mortgage exceeded $207,000 by a significant amount.

(Pl.'s Mem. Supp. Summ. J. ¶ 10 (citing Balthasar Aff. ¶ 6 and Plant Dep. p. 37).[4]) Without citing any support, Bossier asserts that Ameriquest caused the payoff amount of the GreenPoint loan to rise:

> The only reason apparent why AmeriQuest was obligated to pay Greenpoint an amount in excess of the budgeted amount was because of accumulation of late charges, interest and foreclosure costs over

---

[4] Paragraph 6 of the Balthasar Affidavit provides:

> After the closing Ameriquest learned that the GreenPoint mortgage exceeded $207,000 by a significant amount. Because the proceeds of its loan to Mr. Plant would not have been sufficient to pay off the GreenPoint mortgage, Ameriquest cancelled Mr. Plant's loan. However, due to a lapse in communications between Ameriquest and its borrower, Mr. Plant remitted seven payments to Ameriquest during 2003 and early 2004. The total of these seven payments was $15,137.98.

(Balthasar Aff. ¶ 6.) Plant testified in his deposition that he had not made all the GreenPoint mortgage payments on time. (Plant Dep. p. 37 (Q. Did you continue to make [payments on the GreenPoint mortgage] after you signed the Land Installment Contract? A. As much as I could, yes. Q. Did you fall behind? A. I have been late on that payment for her.").)

>the period in excess of 10 months between the closing date and the date on which the matter was resolved.

(Defs' Opp. Mot. Summ. J. ¶ 10; *see also id.* at ¶¶ 5-8 (attributing these costs to an error on Ameriquest's part).) There are clearly factual questions with respect to Ameriquest's responsibility for the increased payoff amount. There are factual issues with respect to the windfall which Bossier enjoyed.

There are disputes concerning the circumstances under which Bossier allegedly retained the benefit conferred by Ameriquest. For example, Ameriquest emphasizes the degree to which Bossier assisted Plant in arranging his various financing, including the financing with Paramount Mortgage Company that took place after the Settlement Agreement was executed. (*See* Pl.'s Reply Supp. Summ. J. p. 5.) Bossier, however, emphasizes that "AmeriQuest never contacted Defendant Bossier or informed her of the proceedings" during the negotiations that preceded the Settlement Agreement. (Defs' Opp. Mot. Summ. J. ¶ 9.) Ultimately, these factual allegations must be weighed by a jury to determine whether Plaintiff's claim of unjust enrichment against Bossier has merit.[5] Accordingly, the parties' cross-Motions for Summary Judgment with respect to Count II of the Complaint are DENIED.

## CONCLUSION

---

[5] This conclusion is supported by the two cases discussed by the parties. *See Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 116 (Md. Ct. Spec. App. 2000) ("'Where the benefit is intentionally conferred, is not in cash or specific chattels, and the parties are in a position to bargain about compensation, the cases, in line with *Ulmer v. Farnsworth*, 15 A. 65 (Me. 1888) deny restitution.'") (quoting 1 D. Dobbs, Law of Remedies § 4.9(4), at 693 (2d ed. 1993)); *Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966) ("[I]f a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession.") (citations omitted).

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED-IN-PART and DENIED-IN-PART and Defendants' Motion for Summary Judgment is DENIED. A separate Order follows.


Dated: February 13, 2007            /s/
                                    Richard D. Bennett
                                    United States District Judge